AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

<table>
<tr><td>United States of America<br>v.<br><br>JARVIS TOUSSAINT<br><br><br><br><br><br><br>_____<br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   4:26-mj-70661 MAG</td></tr>
</table>

**FILED**

May 08 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____March 7, 2026____ in the county of ____Alameda____ in the
____Northern____ District of ____California____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of ammunition. |

This criminal complaint is based on these facts:

See attached affidavit of ATF Special Agent Joy Andres

☑ Continued on the attached sheet.

Approved as to form: /s/ Jonah Ross
    AUSA Jonah Ross

_____
/s/ Joy Andres
*Complainant's signature*

Joy Andres, ATF Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date:    05/07/2026

_____
*Judge's signature*

City and state:    Oakland, CA

Hon. Ajay S. Krishnan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT

I, Joy Andres, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, hereby declare as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint for Jarvis Toussaint ("TOUSSAINT") for unlawfully possessing ammunition, in violation of Title 18, United States Code, Section 922(g)(1), on or about March 7, 2026, in the Northern District of California.

### SOURCES OF INFORMATION

2.      This affidavit is submitted for the limited purpose of securing a criminal complaint.  I have not included every fact known to me concerning this investigation.  Instead, I have set forth only the facts necessary to establish probable cause that a violation of the federal law identified above has occurred.  Further, my understanding of the significance of certain events and facts may change as the investigation progresses.

3.      The information in this affidavit, including the opinions which I have formed and statements set forth herein, is based upon my training and experience in the field of firearms investigations, personal participation during the course of this investigation, knowledge obtained from investigative reports, reliable sources of information relevant to this investigation, consultation with other experienced local and federal law enforcement officials, and upon my examination and review of various reports and other records.  Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or indirectly in a written report.  The officer providing me with the information may have received the information by way of personal knowledge or from another source.

1

**AFFIANT BACKGROUND**

4.      I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since February 2024.  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I have worked previously as a Crime Scene Technician for the Albuquerque Police Department, which included the collection of evidence such as firearms, ammunition, fired cartridge cases, illegal drugs and trace evidence.  I graduated from the Criminal Investigator Training Program in October of 2023, and the ATF National Academy Special Agent Basic Training Course in February of 2024.  My duties include the investigation of criminal violations of federal firearms, explosives, and arson laws, as well as those involving violent crime.  I have received training in and discussed with experienced law enforcement officers various topics including the identification of various illegal drugs based off consistency and packaging, as well as the identification of signs of possession with intent to distribute.  Additionally, I've received training in and have discussed with experienced law enforcement officers topics such as firearms trafficking, violent crime investigations, criminal street gangs, and a wide variety of investigative techniques to include the forensic analysis of electronic devices.

**APPLICABLE STATUTES**

5.      The elements of Title 18, United States Code, Section 922(g)(1) are as follows: (1) the defendant knowingly possessed a firearm or ammunition; (2) that firearm or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States; (3) at the time the defendant possessed the firearm or ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time the defendant possessed the firearm or ammunition, the defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

2

## FACTS SUPPORTING PROBABLE CAUSE

### TOUSSAINT Possessed a Firearm and Ammunition on or about March 7, 2026

*TOUSSAINT Engaged in a Shootout at an Oakland, CA, Nightclub, Leading to the Deaths of Two People*

6.       Shortly after 3:30 a.m. on March 7, 2026, officers with the Oakland Police Department responded to reports of a shooting at EZ's Lounge on 14th Street in Oakland, CA. After entering EZ's Lounge, officers observed multiple people suffering from gunshot wounds, including a 33-year-old woman (L.B.) and a 24-year-old man (M.M.), both of whom later died from these wounds, according to the coroner's report.

7.       Through a combination of surveillance video, automated license plate reader technology, car dealership records, Instagram evidence, cell phone location data, and DNA analysis, investigators identified TOUSSAINT as the man who shot and killed M.M. at EZ's Lounge on March 7, 2026, and then fled the scene.

8.       Surveillance video recovered from EZ's Lounge recorded the shooting that led to the deaths of L.B. and M.M.  The footage[1] showed a man (later identified as TOUSSAINT) dressed in black and wearing several chains around his neck and a white and black baseball-style cap with an "S.F." logo standing inside EZ's Lounge, as people congregated throughout the interior of the nightclub.  TOUSSAINT then removed his cap and placed a black balaclava over his face before once again placing the cap on his head.  M.M. began to gesture in TOUSSAINT's direction, and TOUSSAINT then walked toward M.M.  The screenshots below depict TOUSSAINT in the red circle on the right, and the third image also depicts M.M. in a red circle:

---

[1] Officers noted that the time stamp on the video was one hour ahead of the actual time.







9.     After TOUSSAINT approached M.M., M.M. briefly turned his back to TOUSSAINT and then turned back to face TOUSSAINT.  M.M.'s right hand was now tucked under his left armpit, as depicted below:





10.    With his left hand, M.M. shoved TOUSSAINT, who stumbled backward:



11.  After M.M. lunged toward TOUSSAINT with his left hand, TOUSSAINT fired multiple rounds at M.M. from a pistol held in his right hand.  The surveillance video showed at least seven muzzle flashes from TOUSSAINT's pistol, indicating at least seven shots fired.  I know from training and experience that the way the muzzle flashes appear one at a time, rather than in sustained bursts, indicates that a single round was fired with each pull of the trigger, consistent with the functioning of a semi-automatic pistol.  From training and experience, I also concluded that TOUSSAINT's pistol was equipped with a standard (rather than high-capacity) magazine, because the magazine did not extend below his hand as he held it.  And, from training and experience, I know that pistols eject a spent shell casing after each round is fired.  As the shooting began, L.B. ran from where she was seated and moved from left to right across the surveillance footage, as depicted in the bottom circle below:



12.  The screenshot below captures a muzzle flash as TOUSSAINT fires at M.M.:



13.     As TOUSSAINT continued to fire shots at M.M., M.M. also began to fire shots from a pistol he held in his hand.  The shots were aimed in the direction in which L.B. had run, and where she was ultimately found by OPD officers and later pronounced dead.  The footage shows sustained bursts of muzzle flashes from M.M.'s pistol and shell casings flying in the air. Based on my training and experience, the long bursts of muzzle flash while the pistol ejects multiple shell casings indicates that the pistol fired as a fully-automatic machinegun:



8

14.    As TOUSSAINT ran to flee the nightclub, he fired additional rounds at M.M., who continued to fire rounds toward the area where L.B. had run.  See below.  The footage does not depict anyone other than TOUSSAINT or M.M. shooting a firearm, nor did any witness report anyone else shooting a firearm.



15.    In contrast to TOUSSAINT's pistol, M.M.'s pistol appeared to be equipped with a high-capacity magazine, which extended beneath M.M.'s hand as he held it:



16.    As M.M., who had suffered multiple gunshot wounds, pulled himself out of the room, he left his pistol by a post:



17.    At approximately 3:35 a.m., OPD officers entered EZ's Lounge.  Officers performed lifesaving maneuvers on both L.B. and M.M., but both ultimately died from the gunshot wounds.  At least five other people also suffered gunshot wounds.  An OPD officer later recovered the pistol M.M. had fired and left by a post.  It was determined to be a 10mm caliber Glock pistol, equipped with an extended 22-round magazine—which held no ammunition when the officer recovered it—and an aftermarket "autosear" device, which converted it to fire as a fully-automatic machinegun.

10

18.    Inside the nightclub, officers recovered 29 spent shell casings, each of which were 10 mm caliber, and one live (unfired) .40 caliber round.  Preliminary shell casing analysis comparing the 29 spent casings located at the scene to spent casings test-fired by the Glock 29 pistol possessed by M.M. indicated that 22 of the spent casings had been fired from M.M.'s Glock 29 pistol.  The remaining seven shell casings—which were manufactured by Companhia Brasileira de Cartuchos—were not fired from the recovered Glock 29 pistol, but were all fired from the same firearm.

19.    Officers also recovered a white baseball-style cap with an "SF" logo, appearing identical to the one worn by TOUSSAINT at EZ's Lounge:

 

20.    After the shooting, an OPD officer attempted to detain a man—who matched neither shooter's appearance—who appeared to have a gun-shaped bulge in his waistband area and walking near EZ's Lounge.  The man ultimately fled, but a pistol fell from his waistband, and the officer recovered it.  The pistol was a .40 caliber Glock pistol with a 22-round magazine. Because the man did not match the appearance of the shooter and his pistol fired a different caliber of ammunition than the recovered spent shell casings, he was determined not to be a suspect in the shooting.

11

*Identification of TOUSSAINT*

21.     Surveillance footage from the area of EZ's Lounge showed a dark BMW SUV traveling westbound on the 300 block of 14th Street at approximately 2:53 a.m. on March 7, 2026—approximately 37 minutes before the shooting—and then double-parking on the 1400 block of Franklin Street, which is around the corner from EZ's Lounge.  A subject wearing a white cap and black clothing exited the driver's door of the BMW and walked toward the 400 block of 14th Street, where the nightclub was located:

 

22.     Surveillance footage showing the sidewalk in front of the nightclub captured TOUSSAINT prior to the shooting, wearing the same jewelry and distinctive white cap with an "S.F." logo:

 

23.     At approximately 3:33 a.m., immediately after the shooting, the cameras captured TOUSSAINT as he fled EZ's Lounge and ran eastbound on the 400 block of 14th Steet, toward Franklin Street.  Surveillance footage showed what appeared to be the same person approaching the driver's door of a dark BMW SUV, and eventually removing a balaclava from his head:



13

24.    Using automated license plate reading cameras, officers subsequently identified images of a dark grey BMW X3 SUV, with a temporary plate ending in -7M78, traveling westbound on I-580 near Rusting Avenue—approximately seven miles from EZ's Lounge—at 2:39 a.m. on March 7, 2026.  At the time, it was driving in the direction of EZ's Lounge. Additional images of the same vehicle captured by license plate reading technology showed a decal reading "East Bay BMW.com Courtesy Vehicle."  Records from East Bay BMW confirmed that, prior to the March 7, 2026 shooting, TOUSSAINT had been provided this vehicle as a "service replacement vehicle," and he had not yet returned it.  Investigators located TOUSSAINT's DMV photograph, which matched the appearance of the shooter:

 

25.    TOUSSAINT had also provided his home address, his phone number, and his email address to East Bay BMW.

26.    Pursuant to a warrant, investigators received cell phone location data associated with the phone number provided.  The data indicates that, on March 7, 2026, the phone traveled along the same path as the BMW SUV, communicating with a cell tower by I-580 near Rusting Avenue at 2:39 a.m., and communicating with cell towers by the nightclub from about 2:45 a.m., before leaving the area at around 3:43 a.m.

14

27.    Furthermore, investigators identified an Instagram account associated with the phone number and email address TOUSSAINT had listed when he was provided the BMW SUV.  Pursuant to a warrant, investigators reviewed the contents of the account, which included a photograph of TOUSSAINT wearing a white baseball-style cap with a black "S.F." logo, which appears identical to the hat he wore on the night of the shooting and that was ultimately recovered at the scene by OPD officers:

 

28.    On March 19, 2026, TOUSSAINT was arrested by the San Joaquin County Sheriff's Office for an unrelated felony offense.  Officers with the United States Probation Office subsequently searched the residence TOUSSAINT—who was then and is still on federal supervised release—had provided as his address when receiving the BMW.  In a bedroom that was not believed to be TOUSSAINT's, the officers located approximately 58 rounds of ammunition, but the ammunition was of a different caliber than the shell casings recovered at EZ's Lounge following the shooting.  They did not locate a firearm.

29.    On March 25, 2026, OPD officers located the BMW SUV.  Officers conducted a search of the vehicle but found no firearms or ammunition.

30.    Pursuant to a warrant, on March 25, 2026, an OPD officer obtained a buccal swab from TOUSSAINT.  The OPD Criminalistics Division conducted DNA testing comparing TOUSSAINT's buccal swab to samples from the rear band and interior of the white cap with an

"S.F." logo that was recovered from the scene of the shooting.  The analysis confirmed that, for each part of the cap, there was a major male donor, and TOUSSAINT's DNA was determined to be "Included" with a Frequency of 1 in one septillion for the interior of the cap, and 1 in 56 sextillion for the rear band.  TOUSSAINT was excluded as a donor for two blood stains found on the hat.

**The Ammunition Possessed by TOUSSAINT Traveled in Interstate Commerce**

31.     A certified interstate nexus expert from the ATF reviewed photos of all 29 spent shell casings recovered after the March 7, 2026 shooting, including the seven casings manufactured by Companhia Brasileira de Cartuchos, and concluded that each shell casing was manufactured outside of California, and thus each shell casing must have traveled in interstate and/or foreign commerce before being recovered in the Northern District of California.

**Prior to March 7, 2026, TOUSSAINT Had Been Convicted of Multiple Felonies and Been Sentenced to More Than a Year in Custody on Multiple Occasions**

32.     As part of my investigation, I conducted a review of TOUSSAINT's criminal history and confirmed that TOUSSAINT had previously been convicted of multiple crimes punishable by a term of imprisonment exceeding one year.  Among other felony convictions, in 2012, TOUSSAINT was convicted of conspiracy to commit robbery affecting interstate commerce (18 U.S.C. § 1951(a)) and ultimately sentenced to 90 months in prison.  Further, in 2019, he was convicted of possessing a firearm as a felon (18 U.S.C. § 922(g)(1)) and was sentenced to 30 months in prison.

33.     Because, on multiple occasions, TOUSSAINT had been sentenced to more than one year in prison for his convictions, there is probable cause to believe that, at the time he possessed the firearm and ammunition on March 7, 2026, TOUSSAINT knew he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year.

/ / /

/ / /

/ / /

16

**CONCLUSION**

34.    Based on the information set forth in the paragraphs above, I submit that there is probable cause to conclude that, on or about March 7, 2026, in the Northern District of California, TOUSSAINT committed the crime of being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

*/s/ Joy Andres*
Joy Andres
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn before me by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 and 4(d) on this 7th day of May, 2026.

HONORABLE AJAY S. KRISHNAN
United States Magistrate Judge

17

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT    ☐ INFORMATION    ☐ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 922(g)(1) – Possession of Ammunition by a Felon

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY:   Maximum 15 years imprisonment
Maximum 3 years supervised release
Maximum $250,000 fine
$100 special assessment
Forfeiture

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**DEFENDANT - U.S**

▶ Jarvis Toussaint

DISTRICT COURT NUMBER

4:26-mj-70661 MAG

**FILED**

May 08 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Bureau of Alcohol, Tobacco, Firearms, and Explosives

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form   Craig H. Missakian

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Jonah P. Ross

### DEFENDANT

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☒ On another conviction

6) ☐ Awaiting trial on other charges

} ☒ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No

} If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year   04/13/2026

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:

☐ Arraignment   ☐ Initial Appearance

Defendant Address:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments: